UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHELTON BROTHERS, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 15-30140-MGM |
| THREE PIRATES, LLC d/b/a POINT | * | |
| BLANK DISTRIBUTING, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING DEFENDANT'S
MOTION TO DISMISS OR IN THE ALTERNATIVE, TO CHANGE VENUE
(Dkt. No. 43)

March 31, 2017

MASTROIANNI, U.S.D.J.

I.     INTRODUCTION

Shelton Brothers, Inc. ("Plaintiff") is a Massachusetts-based corporation that imports,

exports, and distributes alcoholic beverages. Plaintiff sells products to distributors in a number of

states. It has distributed beer through multiple Oregon-licensed wholesale distributors since 1998.

Three Pirates, LLC d/b/a Point Blank Distributing ("Defendant") is a distributor of alcoholic

beverages licensed to operate in Oregon. On September 22, 2005, Plaintiff entered into a written

Wholesale Malt Beverage Sub-Distribution Agreement ("Agreement") with Defendant. Plaintiff filed

this action seeking declaratory judgment that its election to terminate its commercial relationship

with Defendant is effective under the terms of the parties' written agreement. This court has subject

matter jurisdiction based on the uncontested diversity of the parties and the amount in controversy.[1] 28 U.S.C. § 1332. Following various filings by the parties, Defendant filed the Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Change Venue, now pending before the court. Additionally, Defendant has filed a parallel action in Oregon state court. Plaintiff removed the case to federal court and has moved that court to transfer the case to this court. For the reasons detailed below, the court concludes it lacks personal jurisdiction over Defendant and orders this case transferred to the Federal District Court for the District of Oregon consistent with 28 U.S.C § 1631.

## II.   BACKGROUND

The following facts, including those alleged by Plaintiff and the additional, uncontested facts provided by Defendant, are relevant to this court's determinations regarding personal jurisdiction and venue.  In 2005 one of Plaintiff's employees, Ronald Extract, who was based in Chicago, contacted Defendant and informed it that Plaintiff was looking for a new wholesale distributor in Oregon. Following several telephone conversations, the parties executed the Agreement, a one-page document signed by Extract and Defendant's president. (Dkt. No. 37-1, Agreement.) The Agreement provides that Defendant will be the exclusive distributor within a set geographical territory of malt beverages supplied by Plaintiff. (*Id.*) Defendant agreed to supply sales and depletion numbers to Plaintiff on a monthly basis and pay for the products within thirty days of the transfer of goods. (*Id.*) The Agreement contains neither a choice of law nor forum selection clause, but did provide that after the initial year, the Agreement could be "terminated following the rules and guidelines of the [Oregon Liquor Control Commission ("OLCC")] Territorial Agreements." (*Id.*) Under a separate paragraph, the Agreement

---

[1] Though the record does not affirmatively establish that none of Defendant's members are residents of Massachusetts, Defendant has not indicated that any of its members is a Massachusetts resident. Given Defendant's geographic location and absence of contrary information in the docket, the court accepts the parties' representations that the parties are diverse.

obligated Defendant to relinquish its distribution rights in the event Plaintiff's account became more than sixty days past due or more than thirty days past due on more than three occasions within a single year. (*Id.*) In addition, the Agreement provided that Plaintiff could exclude certain brands from the coverage under the Agreement if Defendant did not order the brand for at least a year during which time the brands were available from Plaintiff. (*Id.*)

The parties conducted business pursuant to the Agreement for approximately ten years prior to the filing of this suit. During that period Defendant placed numerous orders for beer with Plaintiff via phone calls and electronic messages, which were received in Massachusetts. Defendant asserts most of its contacts with Plaintiff have been through employees that are not based in Massachusetts. Defendant has also hired transportation companies to pick up product from various warehouses operated by Plaintiff, including one in Massachusetts from which Defendant picked up orders between 2011 and 2013. Approximately 21.4% of orders placed by Defendant were picked up in Massachusetts. The parties appear to agree that Defendant sent payments to Plaintiff's Massachusetts address. Plaintiff alleges Defendant has failed to pay multiple invoices within the time required by the Agreement and multiple payments remain outstanding. Plaintiff has not specifically identified any of the orders picked up in Massachusetts as contested or unpaid.

The parties make various allegations regarding the travels of employees in Massachusetts and Oregon. With the exception of a representative from Plaintiff who attended one or more of Defendant's trade shows in the last few years, the parties appear to agree that none of the various travels were connected to the parties' business relationship.

On September 1, 2015, Plaintiff sent Defendant a ninety (90) day notice of intent to terminate the relationship. Plaintiff claims its motivation for terminating the agreement was (1) Defendant's repeated failure to make full and timely payments, (2) Plaintiff's disappointment with Defendant's

volume of sales of the Plaintiff's products, and (3) the existence of a number of commercial disagreements the parties were unable to resolve through negotiation.

### III.   DISCUSSION

#### A.   Personal Jurisdiction

"'In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state.'" *Cossart v. United Excel Corp.*, 804 F.3d 13, 18-19 (1st Cir. 2015) (quoting *Sawtelle v. Farrell,* 70 F.3d 1381, 1387 (1st Cir.1995)). "An exercise of jurisdiction must be authorized by state statute and must comply with the Constitution." *Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005). The First Circuit has sometimes described the Massachusetts long-arm statute as "an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008) (internal quotations omitted). More recently, the court has questioned whether the "Massachusett's long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution." *Copia Comm., LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016). However, as Defendant has based its argument entirely on the limits of the Due Process Clause, this court proceeds to that analysis without separately addressing the Massachusetts long-arm statute.

Personal jurisdiction may be based on either general jurisdiction or specific jurisdiction. *See Harlow*, 432 F.3d at 57 ("The plaintiff need not prove the existence of both types of [personal] jurisdiction; either one, standing alone, is sufficient."). In order to establish either general or specific jurisdiction, the plaintiff must establish the defendant had sufficient "minimum contacts" with the forum state, and that those contacts were purposeful. *Id.* General jurisdiction exists even when the plaintiff's claims are unrelated to the defendant's forum-state contacts, provided the defendant's

contacts with the forum state have been "so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction exists only where the plaintiff's claim is related to the defendant's contacts with the forum state. *See id.*

"The plaintiff has the burden of establishing that jurisdiction over the defendant lies in the forum state." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016). District courts may take one of several approaches when determining whether a plaintiff has met its burden. *Id.* This court chooses to use the prima facie method. *See id.* Under the prima facie method, the plaintiff is only required to "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." *Id.* The court "giv[es] credence to the plaintiff's version of genuinely contested facts" set forth in the pleadings and other filings in the record. *Id.* In addition, the court may consider the any "undisputed facts put forth by the defendant." *Id.*

As Plaintiff was unwilling to concede at the hearing that the court lacked general jurisdiction over Defendant, the court first addresses the question of general jurisdiction. The only contacts Defendant is alleged to have with Massachusetts are (1) its relationship with Plaintiff, which is limited to some business communications, placing orders, making  payments, and, during a two-year period, picking up product in Massachusetts and (2) the attendance of an employee at an industry event in 2009. These contacts are not the type of continuous and systematic contacts that render an entity "essentially at home" in a forum. *See e.g. Daimler AG v. Bauman*, 134 S. Ct. 746, 760-62 (2014) (significant sales insufficient basis for general jurisdiction over corporation in forum state), *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (ruling forum state lacked general jurisdiction over entity even though entity had made large purchases from a business in the forum state, the chief executive officer had traveled to the state for contract negotiations, and the

entity had sent employees into the forum state for training). The court turns next to specific jurisdiction.

"Specific jurisdiction allows a court to hear a particular case as long as 'that case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum.'" *Baskin-Robbins*, 825 F.3d at 35 (quoting *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 288 (1st Cir. 1999)). In order to find the existence of specific jurisdiction, this court must find Plaintiff has established each of three conditions:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must ... be reasonable.

*Copia*, 812 F.3d at 4 (alteration in original, internal quotation marks omitted).

1. Relatedness

"Relatedness requires that 'the action . . . directly arise out of the specific contacts between the defendant and the forum state.'" *Baskin-Robbins*, 825 F.3d at 35 (quoting *Sawtelle*, 70 F.3d at 1389). Plaintiff describes its claims in this action as arising out of the commercial relationship between the parties, a relationship having "its nexus in Massachusetts." (Dkt. No. 48, Pl.'s Opp. to Def.'s Mot. to Dismiss or Change Venue 10.) Additionally, Plaintiff asserts the commercial relationship between the parties could not have been maintained without Defendant's contacts with Massachusetts, which consisted of email and telephone communications between the parties, payments sent to Massachusetts, and at least thirty trips by Defendant into Massachusetts to pick up beer purchased from Plaintiff. Defendant argues that in a contract case, the court should find relatedness only where "'the defendant's contacts with the forum state were instrumental either in the formation of the contract or in its breach.'" (Dkt. No. 44, Pl.'s Mem. Supp. Mot. to Dismiss or Change Venue 14 (quoting *Phillips*, 196 F.3d at 290).) Applying that language to the case here, Defendant argues its

contacts with Massachusetts are not sufficiently related because Defendant had no contacts with Massachusetts while negotiating the contract and its performance under the contract, including any potential breaches, occurred entirely in Oregon where it made its sales.

The relatedness requirement is a "flexible and relaxed standard." *Baskin-Robbins*, 825 F.3d at 36. The First Circuit has found it satisfied in a variety of situations involving contractual disputes. In *Baskin-Robbins*, the parties had negotiated and executed a franchise agreement while the plaintiff was based in one state. A number of years into the parties' relationship, the plaintiff moved to the forum state, where the plaintiff performed work related to its obligations under the parties' franchise agreement. The defendant subsequently renewed the franchise agreement twice by sending renewals to the plaintiff's forum state address. The defendant later sent letters to plaintiff in the forum state. The court found those letters and the established relationship between the parties, including the work the plaintiff did in the forum state consistent with its obligations under the parties' agreement, satisfied the relatedness requirement because the plaintiff's suit arose from a dispute over the significance of the letters. *Id.* at 35-36.

The First Circuit also found the relatedness requirement satisfied in *C.W. Downer & Co. v. Bioriginal Food & Science Corp.*, 771 F.3d 59 (1st Cir. 2014). In that case, the plaintiff sought damages from an alleged breach of contract. *Id.* The First Circuit concluded the "ongoing connection" Defendant had with the forum state, in the form of communications between the parties related to the plaintiff's performance of its obligations under the contract, satisfied the relatedness requirement. *Id.* at 66. In a third case, the defendant's acceptance of funds from a forum resident and execution of an agreement to repay those funds were sufficient for the First Circuit to assume relatedness in a dispute arising out of the defendant's failure to repay, even though the contract was not formalized or entered into the forum state and the defendant did not have an ongoing connection to the forum state. *Adams v. Adams*, 601 F.3d 1 (1st Cir. 2010).

While none of these cases involve factual scenarios identical to this case, taken together, they demonstrate that when a case arises from a dispute related to a contract, even minor contacts with the forum state can satisfy the relatedness test if those contacts were related to the contract claims asserted by the plaintiff. In this case, Defendant entered into a contract with Plaintiff in which it agreed to purchase and distribute alcoholic beverages from Plaintiff and Plaintiff agreed to sell alcoholic beverages for resale in a particular geographic territory. For Plaintiff, performance required processing and fulfilling orders sent to it by Defendant. For Defendant, performance required it to promote sales of the alcoholic beverages available from Plaintiff, place orders for those products with Plaintiff, take delivery of the products, and pay Plaintiff for them. At this stage of the litigation, the court accepts Plaintiff's assertions that the orders were received and processed in Massachusetts and Defendant sent its payments to Massachusetts. Additionally, it is undisputed that for two years, Defendant, through its transportation company, physically entered Massachusetts in order to fulfill its obligations under the Agreement. Though minimal, these contacts directly related to the ongoing contractual relationship between the parties from which Plaintiff's claims arise. The court next considers the purposeful availment element.

    2.  Purposeful Availment

"The purposeful availment inquiry asks whether a defendant has 'deliberately target[ed]' its behavior toward the society or economy of a particular forum [such that] the forum should have the power to subject the defendant to judgment regarding that behavior." *Baskin-Robbins*, 825 F.3d at 36 (quoting *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 555 (1st Cir. 2011)) (alterations in original). Voluntariness and foreseeability are the main ingredients. *Id.* In order to satisfy the voluntariness requirement, a defendant's forum contacts must be the result of the defendant's own, voluntary actions. *Id.* "Foreseeability requires that the contacts with the forum state be of a nature that the

defendant could 'reasonably anticipate being haled into court there.'" *Adams*, 601 F.3d at 6 (quoting *Adelson v. Hananel*, 510 F.3d 43, 50 (1st Cir. 2007)).

"[A] defendant's awareness of the plaintiff's state of residence is not, by itself, enough to create personal jurisdiction," nor does "a defendant's entering into a contract with a resident of the forum state . . . automatically establish minimum contacts." *Id.* at 7. The court must look to the parties' negotiations and the expected consequences, the terms of their contract, and their actual course of dealing to determine whether the defendant's contacts with the forum made it foreseeable that the defendant might have to face litigation in the forum state. *See id.*

The First Circuit has found purposeful availment on the part of defendants in a wide variety of situations. In *Baskin-Robbins*, the First Circuit determined the contacts a defendant had with the forum state attributable to a twelve-year relationship between a franchisee and franchisor were insufficient to establish purposeful availment where the plaintiff had unilaterally moved its operations after the contract and several amendments were executed. *Baskin-Robbins*, 825 F.3d at 37. When the First Circuit considered other facts, however, it determined there was a sufficient basis for finding purposeful availment. *Id.* at 38-40. Specifically, the First Circuit noted that after the plaintiff's unilateral move to the forum state, one of the defendant's officers had visited the plaintiff's new offices and an employee had traveled to the forum state to participate in meetings at the new office on at least two occasions. *Id.* at 38. The court also noted the parties had each sent checks to the other on a monthly basis, meaning the defendant both regularly sent payments to the forum state and received payments from the forum state. *Id.* Finally, the court noted that after the plaintiff's move to the forum state, the plaintiff had performed a number of services in the forum state that were necessary to the parties' ongoing relationship. *Id.* Those services included providing customer service, product testing, and product supply planning. *Id.*

A plaintiff's own conduct within the forum state was also found to be an important consideration in the First Circuit's purposeful availment analysis in *Downer*. 771 F.3d at 67. The First Circuit based its finding of purposeful availment on a combination of facts related to the inception and scope of the contractual relationship between the parties. *Id.* at 66-68. An employee of defendant had initiated the relationship between the parties while physically present in the forum state and the First Circuit viewed this as demonstrating the defendant's intention to reach into the forum state. The nature of the contract also provided a basis for the court's finding of purposeful availment. Specifically, the court described the contract as a service contract that required the plaintiff to undertake a variety of activities, which the defendant would have known, or should have expected, would have taken place at the defendant's office within the forum state. The parties also engaged in a variety of communications by phone and mail and the First Circuit treated these communications as further establishing purposeful availment, even though they occurred without the defendant being present in the forum state. *Id.* at 68.

The First Circuit reached a different conclusion in *Adams*, deciding a defendant who borrowed money from the plaintiff, a resident of the forum state, had acted voluntarily when he accepted funds from the plaintiff and signed a note promising to repay them, but without foreseeing those actions could allow him to be sued in Massachusetts. *Adams*, 601 F.3d at 7-8. In addition to accepting funds and signing a promissory note, the defendant had spoken on the phone with the plaintiff about the loan and the plaintiff argued the defendant had reached into the forum state when he participated in the call. *Id.* at 7. The First Circuit rejected that interpretation, noting an absence of evidence the plaintiff had been in the forum state at the time of the call, and finding it significant that the plaintiff, rather than the defendant had initiated the call. *Id.* After finding an absence of evidence connecting negotiations to the forum state, the First Circuit also found an absence of evidence the note would cause defendant to have future contacts, directly or indirectly, with the forum state. The First Circuit

specifically noted that, on its face, the note executed by the parties did not specify that that it would be payable in the forum state or that its terms would be governed by the laws of the forum state. In addition, the First Circuit concluded, in the absence of contrary language in the note, it would be subject to the law of the place where the defendant lived, rather than the law of the forum state.

Comparing the facts of this case to the examples laid out by the First Circuit in *Adams, Baskin-Robbins*, and *Downer*, the court finds the question of purposeful availment to be close, but ultimately concludes Defendant's contacts with Massachusetts are insufficient to establish purposeful availment. Certainly, Defendant had voluntary contacts with Massachusetts when it picked up product here and when it sent orders and payments. The close question is whether the nature of those contacts was such that it should have been foreseeable to Defendant that it might be haled into court in Massachusetts based on those contacts.

In this case, there is no allegation Defendant reached into Massachusetts to initiate or negotiate the Agreement. Defendant has alleged, and Plaintiff has not disputed, that an employee of Plaintiff who worked out of a Chicago office initiated the parties' relationship by reaching out to Defendant when Plaintiff was looking for a new distributor in Oregon. Plaintiff has not alleged that any negotiations around the Agreement took place in Massachusetts or even that any employees based in Massachusetts participated in the negotiations. The Agreement was signed by the employee of Plaintiff based in Chicago and the Agreement contained no mention of Massachusetts, let alone a forum selection or choice of law provision selecting Massachusetts. *See Bluetarp Financial, Inc. v. Matrix Const. Co., Inc.*, 709 F.3d 72, 82 (1st Cir. 2013) (distinguishing *Adams* and finding purposeful availment where contract contained both a choice of law and forum selection clause in favor of the forum state). The facts alleged regarding the negotiation, execution, and performance of the Agreement do not support finding purposeful availment. Without purposeful availment by the Defendant, this court lacks personal jurisdiction over Defendant.

B.     Transfer

Having concluded this court lacks personal jurisdiction, the court next considers whether this case should be dismissed or transferred pursuant to 28 U.S.C. § 1631. *Fed. Home Loan Bank of Bos. v. Moody's Corp.*, 821 F.3d 102, 119 (1st Cir. 2016), *abrogated, on other grounds, by Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553 (2017). Though neither party addressed the possibility of transfer pursuant to § 1631 as an alternative to dismissal following a determination that this court lacked personal jurisdiction, the court considers the question *sua sponte* consistent with the First Circuit's determination that § 1631 creates a presumption in favor of transfer rather than dismissal in cases where a court determines it lacks jurisdiction.[2] *See Britell v. United States*, 318 F.3d 70, 73 (1st Cir. 2003). The purpose of § 1631 is to protect litigants from procedural errors that would otherwise prevent cases from being resolved on the merits. *Id.* at 74. Transfer is appropriate unless the court finds "that a transfer is not in the interest of justice." *Id.* In making such a determination the court must "determine if 'the action . . . could have been brought at the time it was filed or noticed' in any other federal court," whether a limitations period has run which would prevent a filing in the correct court, and whether the case is frivolous or was brought in bad faith. *Id.* at 74-75.

None of these considerations weigh against transfer in this case. Plaintiff could have filed this action in Oregon originally and should be permitted to pursue the merits of the case in an appropriate jurisdiction. The second consideration is neutral since there is related litigation filed by Defendant already pending in Oregon, but even were it to be dismissed, the court is not aware of any limitations periods or other impediments that would prevent Plaintiff from refiling in Oregon. Given the posture of this case, the court observes the third consideration to be the most relevant. Having found the

---

[2] The parties had briefed the question of whether, if the court found it had personal jurisdiction over Defendant, it should, nonetheless, transfer the case to Oregon pursuant to 28 U.S.C. § 1404. The parties' positions with respect to transfer pursuant to 28 U.S.C. § 1404, in the absence of which the case would remain with this court, were the opposite of what the court would anticipate with respect to transfer pursuant to § 1631, where the alternative is dismissal.

question of personal jurisdiction is a close one, the court can hardly find Plaintiff acted in bad faith when it filed in this jurisdiction. Nor is this case "fanciful or frivolous" on its face. *Id.* In the absence of indicia suggesting the interests of justice would not be served by transfer, the court concludes transfer under § 1631 is appropriate in this case.

III.    CONCLUSION

For these reasons, the court ALLOWS in part Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Change Venue. (Dkt. No. 43.) The court concludes that it lacks personal jurisdiction over Defendant, but orders the case transferred to the District of Oregon pursuant to 28 U.S.C. § 1631.

It is So Ordered.

_/s/ Mark G. Mastroianni_____
MARK G. MASTROIANNI
United States District Judge